# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON TEXAS

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Montrose Multifamily Members, LLC, *et al.*[1] | ) | Case No. 22-90323 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**MOVANT REQUESTS THAT THE MOTIION BE HEARD ON MONDAY, JANUARY 9, 2023, AT 3:00 PM CT IN COURTROOM THERE WILL BE A HEARING ON THIS MATTER ON [DATE] AT [TIME] IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002.**

**DLP CAPITAL'S EMERGENCY MOTION TO LIFT THE AUTOMATIC STAY
TO FORECLOSE ON DEBTORS' PROPERTIES**

---

[1] The Debtors in these Chapter 11 cases (together, the "Chapter 11 Cases"), along with the last four digits of each Debtors' federal tax identification number, are: Montrose Multifamily Members II, LLC (5725); Colquitt 2008, LP (6108); Westmoreland Partners, LLC (1492); Graustark Members II, LLC (1605); Kipling Partners LLC (2339); MT Vernon Members, LLC (5014); and Norfolk Partners LLC (3182). The location of Debtor Montrose Multifamily Members, LLC's principal place of business and the Debtors' service address is 4203 Montrose Blvd., Suite 400, Houston, Texas 77006.

DLP Capital's Emergency Motion to Lift the Automatic Stay
to Foreclose on Debtors' Properties                                                                 Page 1 of 17
4854-4033-3896 v2

DLP Capital Servicing LLC, as servicer for lender DLP Lending Fund, LLC, DLP Housing Loans, LLC, DLP Income & Growth Fund LLC, and its related entities (collectively, "DLP Capital"), files this *Emergency Motion to Lift the Automatic Stay to Foreclose on Debtors' Properties* (the "Motion"), pursuant to 11 U.S.C. §§ 362(d)(1) and (3), and respectfully submits the following:

## PRELIMINARY STATEMENT

1. The Debtors are single asset real estate debtors. They have failed to either: (i) file a plan of reorganization that has a possibility of being confirmed in a reasonable time; or (ii) commence making interest-only payments at the non-default contract rate to DLP Capital within the time period provided for by the Bankruptcy Code. In each of the Chapter 11 Cases, DLP Capital is a secured creditor with liens and security interests in substantially all of the Debtors' assets. Therefore, the Court must lift the automatic stay in order to allow DLP Capital to exercise its rights under its Loan Documents (as hereinafter defined) and/or applicable state law. Moreover, cause exists for the termination of the automatic stay because the Debtors' authority to use cash collateral has terminated on January 6, 2023, and the Debtors have failed to comply with the Court's orders.

## RELEVANT BACKGROUND

**A. Debtors' Properties**

2. Each of the Debtors own one or more tracts of real estate with improvements, specifically apartment buildings, that are more particularly described as follows.

3. Colquitt 2008, LP ("Colquitt") owns an eight-unit apartment complex located at 2008 Colquitt Street, Houston, Texas (the "Colquitt Property"). *See* Schedule A/B, Doc. No. 67, at p.7.

4. Norfolk Partners, LLC ("Norfolk") owns a twenty-unit apartment complex located at 1717 Norfolk Street, Houston, Texas (the "Norfolk Property"). *See* Schedule A/B, Doc. No. 71, at p. 7.

5. Kipling Partners, LLC ("Kipling") owns an eight-unit apartment complex located at 1423 Kipling Street, Houston, Texas (the "Kipling Property"). *See* Schedule A/B, Doc. No. 73, at p. 7.

6. Westmoreland Partners, LLC ("Westmoreland") owns a sixteen-unit apartment complex located at 400 Westmoreland Street, Houston, Texas (the "Westmoreland Property"). *See* Schedule A/B, Doc. No. 72, at p. 7.

7. Mt. Vernon Members, LLC ("Mt. Vernon") owns a sixteen unit apartment complex located at 4321 Mt. Vernon Street, Houston, Texas (the "Mt. Vernon Property"). *See* Schedule A/B, Doc. No. 70, at p. 7.

8. Montrose Multifamily Members II, LLC ("Montrose II") owns four apartment complexes,[2] specifically: (i) one twenty unit apartment complex located at 2212 Dunlavy Street,

---

[2] A single asset real estate debtor may have two or more separate properties provided they are "linked together in some fashion in a common plan or scheme involving their use." *In re Hassen Imports Partnership,* 466 B.R. 492, 507 (Bankr. C.D. Cal. Mar. 7, 2012) (quoting *In re the McGreals*, 201 B.R. 736, 742-43 (Bankr. E.D. Penn. 1996)). Courts have considered various factors when determining whether multiple properties constitute a single project, including: (i) use of the properties; (ii) circumstances surrounding the acquisition of the properties, including the time of the acquisition and the funds used to acquire the properties; (iii) location of the properties and proximity of the properties to one another; and (iv) any plans for future development, sale or abandonment of the properties. *In re Hassen Imports Partnership*, 466 B.R. at 507-08.

The Montrose II Operating Agreement is clear that Montrose II was formed to own and operate the apartment complexes as one project. The Montrose II Property was acquired and financed by DLP Capital in one transaction and serves as collateral for the same loan. Moreover, as demonstrated by the Debtors' interim cash collateral

Houston, Texas; (ii) one eighteen unit apartment complex located at 1507 California Street, Houston, Texas; (iii) one fourteen unit apartment complex located at 606 Harold Street, Houston, Texas; and (iv) one fifteen unit apartment complex located at 306 Stratford Street, Houston, Texas (altogether, the "Montrose II Property"). *See* Schedule A/B, Doc. No. 69, p. 7.

9.  Montrose Multifamily Members, LLC ("Montrose") owns three tracts of land containing apartment complexes,[3] specifically: (i) one 28-unit apartment complex located at 239 Emerson Street, Houston, Texas; (ii) one 24-unit apartment complex located at 2301 Commonwealth Street, Houston, Texas; and (iii) one 12-unit apartment complex located at 417 W. Main Street, Houston, Texas. (the "Montrose Property"). *See* Schedule A/B, Doc. No. 66, p. 7.

10. Graustark Members II, LLC ("Graustark") owns two eight-unit apartment complexes[4] located at 3412 and 3414 Graustark Street, Houston, Texas (altogether, the "Graustark Property"). *See* Schedule A/B, Doc. No. 68, at p. 7.

11. Hereinafter, all of the above-described properties are referred to as the "Properties."

---

budgets, Montrose II continues to operate the complexes as one single project, collecting rents and revenues from the Montrose II Property as a whole and depositing the funds into a single designated account.

[3] *See* n. 2, *supra*. The Montrose Operating Agreement is clear that Montrose was formed to own and operate the apartment complexes as one project. The Montrose Property was acquired and financed by DLP Capital in one transaction and serves as collateral for the same loan. Moreover, as demonstrated by the Debtors' interim cash collateral budgets, Montrose continues to operate the complexes as one single project, collecting rents and revenues from the Montrose Property as a whole and depositing the funds into a single designated account.

[4] *See* n. 2, *supra*. The Graustark Operating Agreement is clear that Montrose was formed to own and operate the apartment complexes as one project. The Graustark Property was acquired and financed by DLP Capital in one transaction and serves as collateral for the same loan. Moreover, as demonstrated by the Debtors' interim cash collateral budgets, Graustark continues to operate the complexes as one single project, collecting rents and revenues from the Graustark Property as a whole and depositing the funds into a single designated account.

**DLP Capital's Emergency Motion to Lift the Automatic Stay
to Foreclose on Debtors' Properties**     Page 4 of 17
4854-4033-3896 v2

12. DLP Capital's claims are secured by substantially all of the Debtors' assets (collectively, the "Collateral"), including the Properties, pursuant to its Loan Documents.[5]

### B. Events Prior to the Bankruptcy Filing

13. Prior to their bankruptcy filings, each of the Debtors defaulted on their obligations to DLP Capital, as set forth in the applicable Loan Documents, as a result of, among other defaults: (i) failure to make one or more monthly installment payments required by the applicable Notes; and (ii) allowing more than ten (10) days to expire from the date that such installment payments were due. Moreover, the maturity date for each of DLP Capital's senior secured loans to the Debtors passed pre-petition.[6]

14. On July 26, 2022, DLP Capital provided each respective Debtor with a formal "Notice of Event of Default and Demand for Payment in Full" (collectively, the "Default Notice Letters"). After sending the Default Notice Letters, the Debtors failed to make the required payment of all outstanding sums due under the Loan Documents by the Payment Deadline.

15. On or around August 31, 2022, DLP Capital appointed a Substitute Trustee, and provided a separate Notice of Substitute Trustee's Sale (the "Foreclosure Sales") to each of the Debtors.

16. On October 4, 2022, mere minutes before the commencement of the Foreclosure Sales, DLP Capital was notified of the Debtors' bankruptcy filings. As a result, the Foreclosure Sales were cancelled.

---

[5] For avoidance of doubt, "Loan Documents" shall refer to those certain Notes, Loan and Security Agreements, and Deed of Trust, Assignment of Leases and Rents, Fixture Filing and Security Agreements (individually, the "Deeds of Trust"), executed by each respective Debtor, along with any other related documents. All capitalized but undefined terms in paragraph 1 shall have the same meaning as in the respective Loan Documents.

[6] The maturity date was August 1, 2022 for all Debtors other than Mt. Vernon Members, LLC, whose loan matured July 1, 2022.

17. As of September 30, 2022, the Debtors owed the following amounts to DLP Capital:[7]

| Debtor | Past Tax Due | Principal | Monthly Non-Default Interest Amount | Fees & Default | Total, as of 9/30/22 | Maturity Date |
|---|---|---|---|---|---|---|
| Westmore Partners, LLC | $49,482.50 | $2,644,750.00 | $18,711.61 | $186,383.74 | $2,849,845.35 | 08/01/2022 |
| Montrose Multifamily Members II, LLC | $114,283.39 | $11,000,000.00 | $77,825.00 | -$205,666.74 | $10,872,158.26 | 08/01/2022 |
| Graustark Members II, LLC | $74,985.47 | $2,495,750.00 | $17,657.43 | $156,366.41 | $2,669,773.84 | 08/01/2022 |
| Montrose Multifamily Members, LLC | $161,067.23 | $11,000,000.00 | $77,825.00 | $935,151.64 | $12,012,976.64 | 08/01/2022 |
| Norfolk Partners, LLC | $75,552.13 | $3,315,250.00 | $23,455.39 | $267,791.92 | $3,606,497.31 | 08/01/2022 |
| Kipling Partners, LLC | $28,020.91 | $1,192,000.00 | $8,433.40 | $49,449.82 | $1,249,883.22 | 08/01/2022 |
| Mt. Vernon Members, LLC | $42,176.33 | $2,587,500.00 | $18,306.56 | $131,584.83 | $2,737,391.39 | 07/01/2022 |
| Colquitt 2008, L.P. | $38,060.42 | $1,452,750.00 | $10,278.21 | $90,933.66 | $1,553,961.87 | 08/01/2022 |

---

[7] DLP Capital reserves the right to amend to these amounts and information, as may be necessary.

| Debtor | Past Tax Due | Principal | Monthly Non-Default Interest Amount | Fees & Default | Total, as of 9/30/22 | Maturity Date |
|---|---|---|---|---|---|---|
| | $583,628.38 | $35,688,000.00 | $252,492.60 | $1,611,995.28 | **$37,552,487.88** | |

C. **Bankruptcy Filings**

18. On October 4, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

19. On October 5, 2022, this Court authorized joint administration of the Chapter 11 Cases. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. To date, no creditors committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

20. On October 13, 2022, the Debtors filed a number of first-day motions, including the *Emergency Motion for (I) Interim Uses of Cash Collateral Pursuant to 11 U.S.C. 363(c), (II) Granting Adequate Protection for the Use of Cash Collateral, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral* (the "CC Motion") [Doc. No. 16].

21. The first-day hearings occurred on October 18, 2022 at 1:00 pm CT (the "First-Day Hearing"). All first-day motions were granted on an interim basis. [*See* Orders, at Doc. Nos. 30, 31, & 33]. The Interim CC Motion was set for a continued hearing on November 2, 2022. The final hearing on the CC Motion has been continued by agreement a number of times and was ultimately scheduled for January 9, 2023, at 3:00 p.m. C.T. (the "Final Hearing").

22. Interim orders on the CC Motion were entered on October 31, 2022 (the "First Interim Order") [Doc. No. 44], November 6, 2022 [Doc. No. 56] (the "Second Interim Order"), November 14, 2022 [Doc. No. 65] (the "Third Interim Order"), December 7, 2022 [Doc. No. 92] (the "Fourth Interim Order"), and December 19, 2022 [Doc. No. 100] (the "Fifth Interim Order;" altogether, the "Interim Orders").

23. On November 18, 2022, at the Debtors' meeting of creditors, the Debtors acknowledged that they were single asset real estate ("SARE") debtors and represented that their respective petitions would be amended to make that election. The petitions were never amended.

24. In connection with the Fourth and Fifth Interim Orders, however, as a condition of continued access to DLP's cash collateral and other relief, the Debtors acknowledged their status as SARE debtors and consented to a judicial finding that they are SARE debtors. As memorialized in Paragraph 4 of those Orders: "Debtors are each respectively a single asset real estate entity as that term is defined in 11 U.S.C. § 101(51)(B) and 11 U.S.C. § 362(d)(3)." Fourth Interim Order, ¶ 4, Fifth Interim Order, ¶ 4.

25. Additionally, Paragraph 17 of the Fifth Interim Order provides:

> On or before January 6, 2023 (the "**Deadline**"), the Debtors must, as required herein and in all prior interim orders entered in this Case (the "Interim Orders"): (i) satisfy all reporting requirements set forth in the Interim Cash Collateral Orders, (ii) make all required payments and deposits required by the Interim Orders; and produce all documents / information set forth in paragraph 11 above. In the event that any of the Debtors fail to comply with this provision of this Order by the Deadline, the Debtors' authority to use Cash Collateral shall terminate effective January 7, 2023, at 12:01 a.m.

26. The Debtors' reporting requirements included providing documentation and support from August 1, 2022 forward for payroll expenses, management fees and maintenance fees. Fifth Interim Order, ¶ 11. The Debtors were also required to provide the December Cash

Reconciliation Report by January 3, 2023, at noon, which was extend to January 8, 2023 by the agreement of the Parties. These reporting requirements were not satisfied.

27. The Interim Orders also require the Debtors to make adequate protection payments to DLP Capital and fund certain tax escrows. Specifically, the Debtors were required to pay DLP Capital adequate protection payments of $128,000 in October pursuant to the First Interim Order, $63,500 in November pursuant to the Second and Third Interim Orders, and $88,500 in December 2022 pursuant to the Fourth and Fifth Interim Orders. Debtors were also required to escrow $6,309.84 with DLP Capital for tax obligations. In total, the above payment obligations total $286,309.84 from October to December 2022. DLP received a total of $285,051.28 for that period. October and November payments were received late, and the December payment has yet to be paid in full.

28. Because Debtors failed to satisfy all reporting requirements and to timely make the required adequate protection and tax escrow payments, their authority to use cash collateral automatically terminated on January 6, 2023 at midnight. These failures also constitute failures to comply with the Court's orders, namely the Interim Orders.

## **RELIEF REQUESTED**

29. DLP Capital requests that the Court grant it relief from the automatic stay so that it may foreclose on the Collateral.

30. Emergency relief is required because Debtors' authorization to use cash collateral expired on January 6, 2023 at midnight. DLP Capital no longer consents to the Debtors' use of cash collateral, and the Debtors cannot operate without authority to use cash collateral. January 2, 2023 marked the 90th day after the Petition Date, and January 6, 2023 marked the 30th day

after the Debtors stipulated that they are SARE debtors in the Fourth Interim Order. Debtors, however, failed to meet the requirements of 11 U.S.C. § 362(d)(3). The Court, therefore, is required by statute to grant DLP Capital's request for relief from stay. Furthermore, there is other cause for the lifting of the automatic stay. Emergency relief will not prejudice the Debtors, but any delay in the granting of relief will harm DLP Capital and threaten the diminution of DLP Capital's Collateral.

## MOTION TO LIFT STAY UNDER 11 U.S.C. § 362(D)(3)

31. The Court must grant DLP Capital relief from the automatic stay to proceed with foreclosure proceedings against the Collateral because the Debtors failed to comply with the mandatory requirements of Section 362(d)(3) of the Bankruptcy Code. In particular, the Debtors did not: (i) file a plan with a reasonable possibility of confirmation within a reasonable time; or (ii) commence making interest-only payments to DLP Capital, within 90 days of the Petition Date and/or 30 days from the entry of an order determining that the Debtors are SARE debtors (the "SARE Deadline"). More specifically, Section 362(d)(3) of the Bankruptcy Code, provides that a single asset real estate debtor must, within 90 days of the petition date, the SARE deadline, either file a plan with a reasonable likelihood probability of being confirmed in a reasonable time or commence making interest only payments to the secured creditor at the non-default rate. If the debtor fails to do either, the court must grant the requesting creditor secured by such property relief from the automatic stay.

32. Courts have found that a debtor's failure to strictly comply with the provisions of 11 U.S.C. § 362(d)(3) mandates relief from the automatic stay. *See In re LDN Corp.*, 191 B.R.

320, 327 (Bankr. E.D. Va. 1996) ("relief under § 362(d)(3) is mandatory when its provisions are not strictly complied with"); *In re Northern Outer Banks Associates, LLC*, 2010 WL 4643721 (Bankr. E.D. N.C. 2010); *In re 652 West 160th LLC*, 330 B.R. 455 (Bankr. S.D.N.Y. 2005).

33. Section 362(d)(3) of the Bankruptcy Code provides that a SARE debtor must, within the SARE deadline, either file a plan with a probability of being confirmed in a reasonable time or commence making interest only payments to the secured creditor at the non-default rate. If the debtor fails to do either, the court must grant the requesting creditor secured by such property relief from the automatic stay.

34. Here, at the meeting of creditors, the Debtors represented that they are SARE debtors, and that they would be amending their petitions to reflect as much. Debtors never amended their petitions; however, in the Fourth and Fifth Interim Orders, they affirmed and this Court found that they "are each respectively a single asset real estate entity as that term is defined in 11 U.S.C. § 101(51)(B) and 11 U.S.C. § 362(d)(3)." Fourth Interim Order, ¶ 4; Fifth Interim Order, ¶ 4.

35. The mandatory deadlines for the Debtors to comply with 11 U.S.C. § 362(d)(3) have expired. Ninety days from the Petition Date passed on January 2, 2023. 11 U.S.C. § 362(d)(3). Thirty days from entry of the Fourth Interim Order, and the Court's determination that the Debtors are SARE debtors, passed on January 6, 2022. Moreover, Section 362(d)(3) does not allow for the SARE Deadline to be extended.

36. Debtors have not filed a plan and cannot file a plan with a possibility of confirmation in a reasonable time. Further, Debtors have not made interest-only payments to

DLP Capital at the non-default rate, and the Debtors financials show that the Debtors are currently unable to make such payments. For example, the Debtors' October operating reports and October and November Cash Reconciliation Reports demonstrate that the Debtors do not have sufficient cash flow to make interest-only payments at the contractual non-default rate. Further, the rough draft of the Debtors' proposed final budget, even without the interest-only payments, project that the Debtors will have a cumulative net loss each month of more than $20,000.

37. Debtor's failures to satisfy the requirements of Section 363(d)(3) justify immediate relief from the automatic stay.

## MOTION TO LIFT STAY UNDER 11 U.S.C. § 362(D)(1)

38. In the alternative, the Court may also grant DLP Capital relief from the automatic stay for cause because Debtors' authority to use cash collateral has terminated and the Debtors have failed to comply with the Court's Interim Orders.

39. Section 362(d) of the Bankruptcy Code authorizes the Court to "grant relief" from the automatic stay – "such as terminating, annulling, modifying, or conditioning" the stay – for "cause." 11 U.S.C. § 362(d). "Section 362(d)(1) does not define "cause," leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997); *see also In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006) ("The Bankruptcy Code does not precisely define 'cause' under § 362(d)(1), and in the past we have noted that this lack of definition affords 'flexibility to the bankruptcy courts.'").

40. "[T]he burden to resist lifting of the stay rests entirely with the Debtor" for all issues except the debtor's equity in property. *In re Abeinsa Holding, Inc.,* 63 Bankr. Ct. Dec. 55 (Bankr. D. Del 2016); *see also In re Downey Financial Corp.*, 428 B.R. 595, 608–09 (Bankr. D. Del. 2010) (citing 11 U.S.C. § 362(g)(1)–(2))("the party opposing stay relief has the burden of proof of on all other issues").

41. Here, cause exists to lift the stay because the Debtors' authority to use cash collateral terminated on January 6, 2023, which renders them unable to continue to operate in the ordinary course of business. Additionally, the Debtors have no possibility of reorganizing without the ability to use cash collateral.

42. The Debtors' failure to comply with the Interim Orders also constitutes cause to lift the automatic stay.

43. The Debtors agreed to pay certain adequate protection payments and fund tax escrows in the Interim Orders. The October and November payments were late, and December has not yet been paid in full.

44. The Interim Orders required Debtors to make adequate protection payments and tax escrow payments. The payments made were late or in amounts less than ordered by the Court. A debtor must provide adequate protection to "retain the benefit of the automatic stay with respect to its property." *In re Bluejay Properties, LLC*, 512 B.R. 390 (10th Cir. BAP 2014).

45. The Debtors have budgeted $88,500 per month going forward for future adequate protection payments, instead of the actual non-default rate, interest-only payment of $252,492.60 per month. However, the budgets for January through May 2023 show the Debtors operating at a

cumulative net loss each month. Thus, the Debtors are not able to pay future adequate protection payments.

46. To the extent that the Debtors argue that DLP Capital is adequately protected by its replacement liens, DLP Capital disagrees. In *Buttermilk Towne Center*, the lender was secured by, among other collateral, a mortgage and assignment of rents. *In re Buttermilk Towne Center, LLC*, 442 B.R. 558, 565 (6th Cir. BAP 2010). The debtor asked to use cash collateral, including the rents, to pay administrative expenses and proposed to protect the secured lender's interest by granting the lender a replacement lien in the cash collateral. *Id*. The issue raised before the *Buttermilk* Court was to determine "whether a lender is adequately protected by a replacement lien on rents in which the lender has an independent security interest[.]" *Id*. The *Buttermilk* court determined that a replacement lien in cash that was already encumbered by the lender's lien could not provide adequate protection. *Id*. at 566; *see also Smithville Crossing, LLC*, 2011 WL 5909527, at *10 (Bankr. E.D.N.C. 2011) (holding that a replacement lien simply provides no protection for the very real interest the creditor has in accruing rents and noting that is why "virtually every case addressing this issue" has rejected the replacement lien).

47. Here, periodic cash payments are the only means by which the Debtors can adequately protect DLP Capital's interests. DLP Capital's liens encumber the Collateral, as a result, there is no material unencumbered property on which the Debtors can grant a replacement lien sufficient to adequately protect DLP Capital.

48. The Court should therefore lift the automatic stay because Debtors did not timely make the court-ordered payments.

49. Similarly, the Debtors failed to comply with the reporting requirements in the Court's Interim Orders. The Interim Orders required Cash Reconciliation Reports for each month. The October and November reports were provided late. The December report has yet to be provided and the extended deadline has passed. The Debtors were also required to provide documentation and support for several expenses from August 1, 2022 forward. Such documentation and support was either incomplete or not provided at all. The Debtors were ordered to provide all such past-due reports by January 6, but failed to do so. Therefore, the Debtors have again failed to comply with the Interim Orders.

50. The Debtors are required to file monthly operating reports each month. Debtors filed their October operating reports late and have yet to file their November operating report. This noncompliance, together with the failure to comply with the Interim Orders also constitutes cause for relief from stay.

## CONCLUSION

**WHEREFORE**, DLP Capital respectfully requests that the Court lift the automatic stay to permit DLP Capital to exercise its rights to foreclosure on the Debtors' Properties and grant DLP Capital such other and further relief as this Court deems just and proper.

Dated: January 9, 2023                                Respectfully submitted:

      /s/Lloyd A. Lim
Lloyd A. Lim
State Bar No. 24056871
Rachel Thompson Kubanda
State Bar No. 24093258
Rachel.Kubanda@keanmiller.com
Michelle V. Friery
State Bar No. 24040934
Michelle.Friery@keanmiller.com
KEAN MILLER LLP
711 Louisiana Street,
South Tower, Suite 1800
Houston, Texas 77002
Telephone: (713) 844-3000
Telecopier: (713) 844-3030

*and*

J. Eric Lockridge
State Bar No. 24013053
eric.lockridge@keanmiller.com
KEAN MILLER LLP
400 Convention Street, Suite 700
P. O. Box 3513 (70821-3513)
Baton Rouge, LA  70802
Telephone: (225) 387-0999
Telecopier: (225) 388-9133

*Counsel for DLP Capital*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that, on January 9, 2023, counsel for DLP Capital conferred with Debtors' counsel by email. Debtors are opposed. Because the necessity of the Motion was not clear until after Debtors missed their January 6 and January 8 deadlines, DLP Capital did not confer earlier.

*/s/Lloyd A. Lim*
Lloyd A. Lim

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 9, 2023, a copy of the foregoing document served to all parties entitled to receive notices through the Court's CM/ECF system.

*s/Lloyd A. Lim*
Lloyd A. Lim