# Promissory Note

**Date:**     July 12 2021

**Borrower:**   BRAN ENTERPRISES, INC, BRAN ENTERPRISES, LLC, BRAN ENTERPRISES II, LLC and CHRISTOPHER BRAN

**Borrower's Mailing Address:**

> 4265 San Felipe Street, Suite 1100
> Houston, Texas 77027

**Lender:**     FAIRVIEW INVESTMENT FUND III, LP

**Place for Payment:**

> 119 S. Main St, Ste. 410
> Seattle, WA 98104

$416,907.66  CB

**Principal Amount:**   $~~337,000.00~~  400,000.00 (CB)

**Annual Interest Rate:**   Eighteen Percent (18.0%)

**Maturity Date:**   July 9, 2022

**Annual Interest Rate on Matured, Unpaid Amounts:**  Highest rate allowed by law, but if applicable law establishes no highest lawful rate, then 18% per annum.

**Terms of Payment (principal and interest):**  The entirety of the principal and interest shall be due, in full, in one lump sum payment on the Maturity Date. Borrower may prepay this note in any amount at any time before the Maturity Date without penalty  or premium.

**THIS LOAN IS PAYABLE IN FULL AS OF THE MATURITY DATE ABOVE. AT MATURITY BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS MAKER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER WILLING TO LEND BORROWER THE MONEY AT PREVAILING MARKET  RATES WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE OF THIS LOAN.**

**Security for Payment:**   This note is secured by a second and inferior second and inferior deed of trust of even date from Borrower to Jason D. Kraus, Trustee, both of which  cover the following real property:

**EXHIBIT "A"**

LOT 5 & TRACTS 4 & 6A, BLOCK 2, DEARBORN PLACE, AN ADDITION IN HARRIS COUNTY TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN THE MAP RECORDS OF HARRIS COUNTY, TEXAS

Lots Sixteen (16), Seventeen (17) and eighteen (18) in Block Three (3) of Westmoreland, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 6, of the Map Records of Harris County Texas

Lots Eight (8) and  Nine (9) in Block Nineteen (19) of Hyde Park, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 1A, Page 117, of the Map Records of Harris County Texas

The East 1/2 of Northwest 1/4th of Block Sixteen (16) of Bute Addition, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 19, of the Map Records of Harris County Texas

**Other Security for Payment:**     None.

Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

If Borrower defaults in the payment of this note or in the payment of the First Lien Note or in the performance of any obligation in any instrument securing or collateral to this note or the First Lien Note, Lender may declare the unpaid principal balance and earned interest on this note immediately due.  Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

A default exists under this note if (1) (a) Borrower or (b) any other person liable on any part of this note or who grants a lien or security interest on any property as security for any part of this note (an "Other Obligated Party") fails to timely pay or perform any obligation or covenant in any written agreement between Lender and Borrower or any Other Obligated Party; (2) any warranty, covenant, or representation in this note or in any other written agreement between Lender and Borrower or any Other Obligated Party is materially false when made; (3) a receiver is appointed for Borrower, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "Collateral Security") for any part of this note; (4) any Collateral Security is assigned for the benefit of creditors; (5) a bankruptcy or insolvency proceeding is commenced by Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party; (6) (a) a bankruptcy or insolvency  proceeding is commenced against Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered; (7) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party; or (8) any Collateral Security is impaired by loss, theft, damage,

levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral security of like kind and quality or restored to its former condition. Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the note and will be secured by any security for payment.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the Principal Amount or, if the Principal Amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be canceled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the Principal Amount or, if the Principal Amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

BRAN ENTERPRISES, LLC

By: _____
Name: _____
Title: _____

BRAN ENTERPRISES II, LLC

By: _____
Name: _____
Title: _____

BRAN ENTERPRISES, INC

By: _____
Name: _____
Title: _____

CHRISTOPHER BRAN

By: _____

# Second Lien Deed of Trust

*Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your social security number or your driver's license number.*

## Terms

**Date:**  July 12, 2021

**Grantor:**   SUL ROSS MEMBERS, LLC and MONTROSE MULTIFAMILY MEMBERS, LLC

**Grantor's Mailing Address:**

> 4265 San Felipe Street, Suite 1100
> Houston, Texas 77027

**Trustee:**   JASON D. KRAUS

**Trustee's Mailing Address:**

> 19500 State Hwy 249, Ste. 350
> Houston, Texas 77070

**Lender:**   FAIRVIEW INVESTMENT FUND III, LP

**Lender's Mailing Address:**

> 119 S. Main St, Ste. 410
> Seattle, WA 98104

**Note**

> **Date:**  July 12, 2021  $416,907.66  cb
> **Original principal amount:** $337,000.00  ~~$337,000.00~~ *(cb)*
> **Borrower:**  BRAN ENTERPRISES, INC, BRAN ENTERPRISES, LLC, BRAN ENTERPRISES II, LLC and CHRISTOPHER BRAN
> **Lender:**  Fairview Investment Fund III, LP
> **Maturity Date:**  July 9, 2022

**Property (including any improvements):**

LOT 5 & TRACTS 4 & 6A, BLOCK 2, DEARBORN PLACE, AN ADDITION IN HARRIS COUNTY TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN THE MAP RECORDS OF HARRIS COUNTY, TEXAS

Lots Sixteen (16), Seventeen (17) and eighteen (18) in Block Three (3) of Westmoreland, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 6, of the Map Records of Harris County Texas

Lots Eight (8) and Nine (9) in Block Nineteen (19) of Hyde Park, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 1A, Page 117, of the Map Records of Harris County Texas

The East 1/2 of Northwest 1/4th of Block Sixteen (16) of Bute Addition, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 19, of the Map Records of Harris County Texas

**Exceptions to Conveyance and Warranty:** Prior liens, if any, described in this deed of trust; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing restrictions, reservations, covenants, conditions, oil and gas leases, and mineral interests outstanding in persons other than Grantor, and other instruments, other than conveyances of the surface fee estate, that affect the Property; validly existing rights of adjoining owners in any walls and fences situated on a common boundary; any discrepancies, conflicts, or shortages in area or boundary lines; and any encroachments or overlapping of improvements.

For value received and to secure payment of the Note, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Note and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

## Clauses and Covenants

### A.      Grantor's Obligations

Grantor agrees to—

1.      keep the Property in good repair and condition;

2.      pay all taxes and assessments on the Property before delinquency, and provide to Lender paid receipts evidencing the payment of such taxes no later than February 1 of each year;

3.      defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

4.      maintain, in a form acceptable to Lender, an insurance policy that—

a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Lender approves a smaller amount in writing;

b. contains an 80 percent coinsurance clause;

c. provides fire and extended coverage, including windstorm coverage;

d. protects Lender with a standard mortgage clause;

e. provides flood insurance at any time the Property is in a flood hazard area; and

f. contains such other coverage as Lender may reasonably require;

5. comply at all times with the requirements of the 80 percent coinsurance clause;

6. deliver the insurance policy to Lender within ten days of the date of the deed of trust and deliver renewals to Lender at least fifteen days before expiration;

7. obey all laws, ordinances, and restrictive covenants applicable to the Property;

8. keep any buildings occupied as required by the insurance policy;

9. pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

10. comply with all federal, state and local environmental laws, rules, regulations and orders concerning the ownership and operation of the Property;

**B.    Lender's Rights**

1. Lender may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2. If the proceeds of the Note are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

3. Lender may apply any proceeds received under the insurance policy either to reduce the Note or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the insurance proceeds available to Grantor for repairs.

4. Notwithstanding note terms to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor under the Note or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender under the Note, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5.      If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6.      If there is a default on the Note or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may—

       a.      declare the unpaid principal balance and earned interest on the Note immediately due;

       b.      direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then        in effect; and

       c.      purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Note.

7.      Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**C.      Trustee's Rights and Duties**

If directed by Lender to foreclose this lien, Trustee will—

1.      either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.      sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3.      from the proceeds of the sale, pay, in this order—

       a.      expenses of foreclosure, including a reasonable commission to Trustee;

       b.      to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

       c.      any amounts required by law to be paid before payment to Grantor; and

       d.      to Grantor, any balance; and

4.      be indemnified by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**D.    General Provisions**

1.      If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.      Recitals in any trustee's deed conveying the Property will be presumed to be true.

3.      Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.      This lien will remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the Property is released.

5.      If any portion of the Note cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6.      Grantor assigns to Lender all amounts payable to or received by Borrower from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Note. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.      Grantor assigns to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Grantor warrants the validity and enforceability of the assignment. Grantor may as Lender's licensee collect rent and other income and receipts as long as Grantor is not in default under the Note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the Note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the Note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the Note or performance of this deed of trust, Lender may terminate Grantor's license to collect rent and other income and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations under the Note and this deed of trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

8.      Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9.      In no event may this deed of trust secure payment of any debt subject to chapters 342, 343, 345, or 346 of the Texas Finance Code or create a lien otherwise prohibited by law.

10.     **Vendor's Lien:** Grantor expressly acknowledges a second and inferior vendor's lien on the Property as security for the Note secured by this deed of trust, which represents funds advanced by Lender at Grantor's request and used in payment of a portion of the purchase price of the Property. This deed of trust does not waive the vendor's lien, and the two liens and the rights created by this deed of trust are cumulative. Lender may elect to enforce either of the liens without waiving the other or may enforce both.

11.     **Due-on-Sale Clause:** If Grantor transfers any part of the Property without Lender's prior written consent, Lender may declare the debt secured by this deed of trust immediately payable and invoke any remedies provided in this deed of trust for default. Exceptions to this provision are limited to (a) creation of a purchase-money security interest for household appliances; (b) transfer by devise, descent, or operation of law on the death of a co-Grantor; (c) grant of a leasehold interest of three years or less without an option to purchase; and (d) transfer from one spouse to the other or between co-Grantors.

12.     **Partial Releases:** N/a

13.     When the context requires, singular nouns and pronouns include the plural.

14.     The term *Note* includes all extensions and renewals of the Note and all amounts secured by this deed of trust.

15.     This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

16.     If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

17.     Grantor and each surety, endorser, and guarantor of the Note waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

18.     Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

19.     If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

SUL ROSS MEMBERS, LLC

By: _____
Name: _Christopher Bran_____
Title: _Manager_____

MONTROSE   MULTIFAMILY   MEMBERS, LLC

By: _____
Name: _Christopher Bran_____
Title: _Manager_____

THE STATE OF TEXAS          §

COUNTY OF HARRIS          §

[Notary seal: Jeremy Nathan Bran
My Commission Expires
05/06/2025
ID No. 133086738]

This instrument was acknowledged before me on the 12th day of July 2021, by Christopher Bran, Manager of Sul Ross Members, LLC and Montrose Multifamily Members, LLC, Texas limited liability companies, on behalf of said companies.

_____
Notary Public, State of Texas

## COLLATERAL PLEDGE AGREEMENT

**This COLLATERAL PLEDGE AGREEMENT** (this "Agreement") dated July _2_ , 2021, is executed and delivered by **Bran Enterprises, LLC,** a Texas limited liability company and **Bran Enterprises, Inc** a Texas Corporation having an address at 4265 San Felipe Street, Suite 1100, Houston, Texas 77027 (the "Pledgor"), in favor of **FAIRVIEW INVESTMENT FUND III, LP** ("Secured Party").

WITNESSETH:

WHEREAS, pursuant to a Loan by and among **Christopher Bran and Bran Enterprises II, LLC** (collectively, the "Borrower") and Secured Party (the "Loan"), Secured Party agreed to make a Loan to the Borrower, all as more specifically described therein;

WHEREAS, the Loan is evidenced by, among other things, a Promissory Note dated as of the Effective Date in the principal amount of $~~337,000.00~~, executed by the Borrower in favor of Secured Party (the "Note"); _$ 400,000.00 (crs) # 416,907.66  cb_

WHEREAS, as of the Effective Date, Bran Enterprises, Inc represents that it owns seventeen and one-half percent (17.50%) of the Montrose Multifamily Members, LLC (MMM") equity and membership interests in this entity ("MMM") <u>and</u> Bran Enterprises, LLC owns sixty percent (60%) of the Sul Ross Members, LLC ("Sul Ross") equity and membership interests in this entity ("Sul Ross").

WHEREAS, MMM owns 239 Emerson St., Houston, Texas 77006, 2301 Commonwealth St., Houston, Texas 77006 and 417 W. Main St., Houston, Texas 77006 and Sul Ross owns 2043 Sul Ross St, Houston, Texas 77098 (the "Portfolio")

WHEREAS, the financing made available to Borrower under the Loan and entering into the Note, this Agreement and the other Loan documents, all at Borrower's request in connection therewith is of substantial and material benefit to the Pledgor;

WHEREAS, the Pledgor has agreed to secure the Borrower's performance under the Loan documents by, among other things, the pledge to, and the grant of a security interest in favor of Secured Party in and with respect to, all of Pledgor's rights, title and interest in its membership interests in Sul Ross Members, LLC and Montrose Multifamily Members, LLC (collectively, the "Pledged Collateral") pursuant to this Agreement and pursuant to the other Loan Documents; and

WHEREAS, Secured Party is willing to make the Loan, but only upon the condition, among others, that the Pledgor shall have executed and delivered to Secured Party this Agreement as a condition precedent; and

WHEREAS, except as otherwise stated herein, all capitalized terms shall have the same meaning as defined in the Loan Agreement.

1

NOW THEREFORE, for other good and sufficient consideration, the receipt of which is hereby acknowledged, Pledgor, intending to be legally bound hereby, covenants and agrees as follows:

1.   Pledgor, for the purposes of granting a continuing lien and security interest, does hereby assign, pledge, hypothecate, deliver and set over to and grant a security interest in favor of Secured Party, its successors and assigns, for the benefit of Secured Party, all of the following property, together with any additions, exchanges, replacements and substitutions therefor, dividends and distributions with respect therefor, and the proceeds thereof, whether now owned or hereafter acquired (collectively, the "Pledged Collateral"): those certain partnership interests in the Company listed on Schedule I attached hereto, whether now owned or hereafter acquired by Pledgor or in which Pledgor now or hereafter has any rights, options or warrants, together with all certificates (if any) representing such interests and all rights (but none of the obligations) under or arising out of the applicable organizational documents of Borrower.

2.   The pledge and security interest described herein shall continue in effect to secure all Obligations (as defined below) from time to time incurred or arising unless and until all Obligations have been indefeasibly paid and satisfied in full and all commitments of Secured Party to make any advances of credit under the Loan Documents have been terminated. The term "Obligations" shall mean (i) the prompt and complete payment when due (whether at the stated maturity, by acceleration or otherwise) of the unpaid principal of and interest on the Note and any and all other amounts as may be due and owing under the other Loan Documents (including all extensions, modifications, renewals, replacements and guarantees thereof) (ii) the due and punctual payment, observance and performance by the Pledgor and the Borrower of all of their respective indebtedness, Obligations and liabilities under, arising out of or in connection with the Loan Documents, or otherwise with respect to the transactions contemplated hereby or thereby; and (iii) as such term is defined in the Loan Agreement.

3.   Pledgor hereby represents and warrants that:

3.1. Except for the pledge and security interests created herein, Pledgor has not sold, assigned, transferred, pledged or granted any option or security interest in or otherwise hypothecated the Pledged Collateral in any manner whatsoever and the Pledged Collateral is pledged herewith free and clear of any and all liens, security interests, encumbrances, claims, pledges, restrictions, legends, and options;

3.2. Pledgor has the full power and authority to execute, deliver, and perform under this Agreement and to pledge the Pledged Collateral hereunder;

3.3. This Agreement constitutes the valid and binding obligation of Pledgor, enforceable in accordance with its terms, and the pledge of the Pledged Collateral referred to herein is not in violation of and shall not create any default under any agreement, undertaking or obligation of Pledgor;

3.4. The Pledged Collateral has been duly and validly authorized and issued by the issuer thereof and, if applicable, such Pledged Collateral is fully paid for and non-assessable;

3.5.Pledgor is pledging hereunder all of the Pledgor's interest and membership in the MMM and Sul Ross, which such interests and membership of Pledgor represents all of its interests in the partnership, equity interests and ownership rights.

3.6.In the event the Pledged Collateral is or becomes represented by physical certificates, Pledgor shall deliver to Secured Party such physical certificates representing or evidencing the Pledged Collateral, together with duly executed instruments of transfer or assignments in blank with respect to the Pledged Collateral in existence to be held by Secured Party in accordance with the terms hereof;

3.7.Contemporaneously with the execution hereof, Pledgor is delivering to Secured Party copies of the articles of organization and operating agreement governing (as of the date hereof) the Borrower;

3.8.Pledgor has also caused Borrower to execute and deliver to Secured Party a Pledge Acknowledgment, substantially in the form of Exhibit A attached hereto, wherein the Borrower shall acknowledge that it has received a copy of this Agreement and that it has been instructed to and shall comply with any instructions originated by Secured Party with respect to the Pledged Collateral, including without limitation all membership interests and/or other equity interests issued by Borrower in favor of Pledgor, and with respect to the exercise of all rights of ownership relating thereto regarding all entity questions (including all such rights relating thereto arising out of the organizational documents of Borrower) and all dividends and distributions payable thereof, without further consent of Pledgor.

4. Borrower has not "opted-in" to Article 8 of the Uniform Commercial Code of the State of Texas (the "UCC") with respect to the equity interests issued by it and any other part of the Pledged Collateral by providing in its certificate of formation, operating agreement or any other entity governance document or any other document governing or evidencing the equity interests issued by it or any other part of the Pledged Collateral that the equity interests issued by it or any other part of the Pledged Collateral shall be "securities" as governed by and defined in Article 8 of the UCC. As of the date hereof, Pledgor represents to Secured Party that the equity interests issued by Borrower (or any other part of the Pledged Collateral related thereto) are not evidenced by physical certificates. Pledgor shall not permit Borrower to adopt any amendments or modifications to any of its certificate of formation, operating agreement or any other entity governance document or any other document governing or evidencing the equity interests issued by Borrower.

5. Pledgor hereby authorizes Secured Party to file UCC-1 financing statements listing Pledgor as the "debtor" and Secured Party as the "secured party" and giving a description of the Pledged Collateral as the "collateral" covered by such financing statement in such jurisdictions, and to file any and all amendments and continuations thereof, as Secured Party may from time to time determine to be necessary, prudent or desirable in order to perfect any security interest granted hereunder under the UCC, all whether or not Pledgor has signed or authenticated any such financing statement, amendment or continuation (to the extent filing of any such financing statement, amendment or continuation without the signature or authentication of Pledgor is permitted by applicable law).

3

6.   If an Event of Default occurs under the Loan Documents, then Secured Party may, at its sole option, exercise from time to time with respect to the Pledged Collateral any and/or all rights and remedies available to it hereunder, under the Loan Documents or under any other Financing Document, under the UCC or otherwise available to it, at law or in equity, including, without limitation, the right to dispose of the Pledged Collateral in a commercially reasonable manner at one or more public or private sale(s)or other proceedings on no less than ten (10) days' prior written notice to Pledgor, and Pledgor and Secured Party agree that, if permitted by law, Secured Party or its respective nominee may become the purchaser at any such sale.

7.   In addition to all other rights granted to Secured Party herein, under the Loan Documents, under the UCC or otherwise available at law or in equity, Secured Party, subject to Section 7 above, shall have the following rights, each of which may be exercised at Secured Party's sole discretion (but without any obligation to do so), at any time following the occurrence and continuance of an Event of Default under the Loan Documents, without further consent of Pledgor: (i) transfer the whole or any part of the Pledged Collateral into the name of itself or its nominee or to conduct a sale of the Pledged Collateral pursuant to the UCC or pursuant to any other applicable law; (ii) vote the Pledged Collateral and exercise of all rights of ownership relating thereto Borrower  or entity questions of Borrower(including all such rights relating thereto arising out of the organizational documents of Borrower); (iii) notify the Persons obligated on any of the Pledged Collateral to make payment to Secured Party, of any amounts due or to become due thereon; and (iv) release, surrender or exchange any of the Pledged Collateral at any time, or to compromise any dispute with respect to the same.  Secured Party may proceed against the Pledged Collateral, or any other collateral securing the Obligations, in any order, and against Pledgor and any other obligor (including without limitation, Borrower), jointly and/or severally, in any order to satisfy the Obligations.  Pledgor waives and releases any right to require Secured Party to first collect any of the Obligations secured hereby from any other collateral of Pledgor or any other party (including, without limitation, Borrower) securing the Obligations under any theory of marshalling of assets, or otherwise.  All rights and remedies of Secured Party are cumulative, not alternative.

7.1.Pledgor hereby irrevocably appoints Secured Party its attorney-in-fact, subject to the terms hereof, with the following powers exercisable after the occurrence and during the continuance of an Event of Default under the Loan Documents, at Secured Party's option, (i) to effectuate the transfer of the Pledged Collateral on the books of the Borrower to the name of Secured Party or to the name of Secured Party's nominee, designee or assignee; (ii) to endorse and collect checks payable to Pledgor representing dividends, distributions or other payments on the Pledged Collateral; (iii) to vote the Pledged Collateral and exercise of all rights of ownership relating thereto regarding all entity questions of Borrower(including all such rights relating thereto arising out of the organizational documents of the Borrower) and (iv) to carry out the terms and provisions hereof.

8.   The proceeds of any Pledged Collateral received by Secured Party at any time after an Event of Default, whether from the sale of Pledged Collateral or otherwise, may be applied to or on account of the Obligations and in such order as Secured Party may elect.  In addition, Secured Party may, in its discretion, apply any such proceeds to or on account of the payment of all reasonable costs, fees and expenses (including, without limitation, attorneys' fees) which may be incurred by Secured Party in connection with this Agreement, the Loan Documents and/or the

transactions contemplated thereby and the enforcement of the rights of Secured Party in respect thereof.

9. Pledgor recognizes that Secured Party may be unable to effect, or may effect only after such delay which would adversely affect the value that might be realized from the Pledged Collateral, a public sale of all or part of the Pledged Collateral by reason of certain prohibitions contained in the Securities Act of 1933, as amended ("Securities Act") and may be compelled to resort to one or more private sales to a restricted group of purchasers who will be obliged to agree, among other things, to acquire such securities for their own account, for investment and not with a view to the distribution or resale thereof. Pledgor agrees that any such private sale may be at prices and on terms less favorable to Secured Party or the seller than if sold at public sales, and therefore recognizes and confirms that such private sales shall not be deemed to have been made in a commercially unreasonable manner solely because they were made privately. Pledgor agrees that Secured Party has no obligation to delay the sale of any such securities for the period of time necessary to permit the issuer of such securities to register such securities for public sale under the Securities Act.

10. In the event that any change is made or declared in the capital structure of Borrower, or Pledgor acquires or in any other manner receives new, substituted or additional membership interests in Borrower, or any option included within the Pledged Collateral with respect to the equity interests in Borrower is exercised, any and all such new, substituted or additional membership interests issued by reason of any such change or exercise to Pledgor shall immediately and automatically become part of the "Pledged Collateral" and be subject to this Agreement and the pledge and grant of a security interests created by Pledgor hereunder and Pledgor hereby grants a security interest in any such future interests to Secured Party to secure the Obligations. No distribution may be paid to or retained by Pledgor unless permitted by the Loan Documents. Immediately upon the issuance of any such new, substituted or additional interests, Pledgor shall deliver written notice of such issuance to Secured Party, which such written notice shall include an updated and amended Schedule I to this Agreement, which shall upon delivery be deemed to have amended and restated the previously effective version of such Schedule I.

11. So long as no Event of Default has occurred and is continuing under the Loan Documents, and, until Secured Party notifies Pledgor in writing after the occurrence and during the continuance of any such Event of Default of the exercise of Secured Party's rights under this Section, Pledgor shall retain the sole right to vote the Pledged Collateral and to exercise of all rights of ownership relating thereto regarding all entity questions of Borrower (including all such rights relating thereto arising out of the organizational documents of Borrower) for all purposes not inconsistent with the terms hereof.

12. Secured Party shall have no obligation to take any steps to preserve, protect or defend the rights of Pledgor or Secured Party in the Pledged Collateral against other parties. Secured Party shall have no obligation to sell or otherwise deal with the Pledged Collateral at any time for any reason, whether or not upon request of Pledgor, and whether or not the value of the Pledged Collateral, in the opinion of Secured Party or Pledgor, is more or less than the aggregate amount of the Obligations secured hereby, and any such refusal or inaction by Secured Party shall not be deemed a breach of any duty which Secured Party may have under law to preserve the Pledged Collateral. Except as required by applicable law, no duty, obligation or responsibility of any kind

is intended to be delegated to or assumed by Secured Party at any time with respect to the Pledged Collateral.

13. To the extent Secured Party is required by law to give Pledgor prior notice of any public or private sale, or other disposition of the Pledged Collateral, Pledgor agrees that ten (10) days prior written notice to Pledgor shall be a commercially reasonable and sufficient notice of such sale or other intended disposition or such longer time if expressly required by applicable law. Pledgor further recognizes and agrees that if the Pledged Collateral, or a portion thereof, threatens to decline speedily in value or is of a type customarily sold on a recognized market, Pledgor shall not be entitled to any prior notice of sale or other intended disposition.

14. Pledgor shall indemnify, defend and hold harmless Secured Party from and against any and all claims, losses and liabilities resulting from any breach by Pledgor of Pledgor's representations and covenants under this Agreement.

15. Except as and if expressly provided otherwise under the Loan Documents, Pledgor hereby waives notice of (a) acceptance of this Agreement, (b) the existence and incurrence from time to time of any Obligations under the Loan Documents, (c) the existence of any event of Default, the making of demand, or the taking of any action by Secured Party under the Loan Documents.

16. Except as and if expressly provided otherwise under the Loan Documents or any other Financing Document, Pledgor hereby consents and agrees that Secured Party may at any time or from time to time in the exercise of its sole reasonable discretion (a) extend or change the time of payment and/or the manner, place or terms of payment of any and all Obligations, (b) supplement, amend, restate, supersede, or replace the Loan Documents, (c) renew, extend, modify, increase or decrease loans and extensions of credit under the Loan Documents, (d) modify the terms and conditions under which loans and extensions of credit may be made under the Loan Documents, (e) settle, compromise or grant releases for any Obligations and/or any Person or Persons liable for payment of any Obligations, (f) exchange, release, surrender, sell, subordinate or compromise any collateral of any party now or hereafter securing any of the Obligations and (g) apply any and all payments received from any source by Secured Party at any time against the Obligations in any order as Secured Party may determine; all of the foregoing in such manner and upon such terms as Secured Party may determine and without notice to or further consent from Pledgor and without impairing or modifying the terms and conditions of this Agreement which shall remain in full force and effect.

17. This Agreement shall remain in full force and effect and shall not be limited, impaired or otherwise affected in any way by reason of (a) any delay in making demand on Pledgor for or delay in enforcing or failure to enforce, performance or payment of Pledgor's obligations, (b) any failure, neglect or omission on Secured Party's part to perfect any lien upon, protect, exercise rights against, or realize on, any property of Pledgor or any other party securing the Obligations, (c) any failure to obtain, retain or preserve, or the lack of prior enforcement of, any rights against any Person or Persons or in any property, (d) the invalidity or unenforceability of any Obligations or rights in any Collateral under the Loan Documents, (e) the existence or nonexistence of any defenses which may be available to the Pledgor with respect to the Obligations or (f) the

commencement of any bankruptcy, reorganization, liquidation, dissolution or receivership proceeding or case filed by or against Pledgor.

18. Except as expressly permitted under the Loan Agreement, Pledgor covenants and agrees that Pledgor shall not, without the prior written consent of Secured Party, which consent may be withheld within Secured Party's sole discretion, transfer, sell, encumber, create any pledge or hypothecation or grant any lien, security interest or option on or with respect to any of the Pledged Collateral.

19. Pledgor, by execution of this Agreement and in connection with the pledges and security interests created in favor of Secured Party hereunder, hereby instructs and directs and authorizes Borrower to comply with any instructions originated by Secured Party with respect to the Pledged Collateral, including without limitation all membership interests and/or other equity interests issued by Borrower in favor of Pledgor, and upon the Event of Default, with respect to the exercise of all rights of ownership relating thereto regarding all entity questions (including all such rights relating thereto arising out of the organizational documents of Borrower), without further consent of the Pledgor. Pledgor hereby agrees that Secured Party may provide a copy of this Agreement to Borrower and agrees that Borrower may rely on the instructions, directions and authorizations contained in the foregoing sentence. Pledgor agrees that Borrower shall be fully protected in complying with the instructions of Secured Party as authorized in the foregoing sentence.

20. No failure or delay by Secured Party in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein and therein provided shall be cumulative and not exclusive of any rights or remedies provided by law. Any reference in this Agreement to the "continuing" nature of any event of default shall not be construed as establishing or otherwise indicating that any Borrower or any other credit party has the independent right to cure any such event of default, but is rather presented merely for convenience should such event of default be waived in accordance with the terms of the applicable financing documents.

21. This Agreement constitutes the entire agreement between the parties hereto regarding the subject matter hereof and may be modified only by a written instrument signed by Pledgor and Secured Party.

22. THIS AGREEMENT AND ALL MATTERS RELATING HERETO OR ARISING HEREFROM (WHETHER SOUNDING IN CONTRACT LAW, TORT LAW OR OTHERWISE), SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

23. Pledgor and Secured Party intend and believe that each provision in this Agreement comports with all applicable local, state or federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Agreement is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision or public policy, and if such court should declare such portion,

Pledge Agreement

provision or provisions of this Agreement to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent both of Pledgor and Secured Party that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Agreement shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein and that the rights, obligations and interests of Pledgor and Secured Party under the remainder of this Agreement shall continue in full force and effect.

24. This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors and assigns, provided that, Pledgor may not assign any of its obligations, duties or undertakings hereunder.

25. EACH OF PLEDGOR AND SECURED PARTY (BY ITS ACCEPTANCE HEREOF) HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.  EACH OF PLEDGOR AND SECURED PARTY (BY ITS ACCEPTANCE HEREOF) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. EACH OF PLEDGOR AND SECURED PARTY (BY ITS ACCEPTANCE HEREOF) WARRANTS AND REPRESENTS THAT EACH HAS HAD THE OPPORTUNITY OF REVIEWING THIS JURY WAIVER WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS.

26. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

27. Time is of the essence in Pledgor's performance under this Agreement.

28. If more than one Person or entity is party to this Agreement as "Pledgor", each reference to "Pledgor" in any provision of this Agreement is deemed to be a reference to all such Pledgors collectively and each such Pledgor individually unless expressly provided otherwise. All such Persons and/or entities party hereto as "Pledgor" shall be jointly and severally liable for all obligations, liabilities, undertakings and duties of Pledgor hereunder and any default in performance hereunder, or breach of any representation or warranty hereunder, by any one such Pledgor shall constitute a default or breach by all such Pledgors.

[Signatures on Following Page]

## SIGNATURE PAGE TO PLEDGE AGREEMENT

IN WITNESS WHEREOF, this Agreement has been executed and delivered as of the date set forth above.

PLEDGOR:

**BRAN ENTERPRISES, INC**

By: _____

Name: Christopher Bran
Title: President

**BRAN ENTERPRISES, LLC**

By: _____

Name: Christopher Bran
Title: Manager

**CHRISTOPHER BRAN**

By: _____

STATE OF  Texas         )
                        ) ss.:
COUNTY OF  Harris       )

Jeremy Nathan Bran
My Commission Expires
05/06/2025
ID No. 133086738

On this 12th day of July, 2021, before me, the undersigned, a Notary Public in and for said State, appeared Christopher Bran, individually and as President of Bran Enterprises, Inc, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

# EXHIBIT A

**Pledge Acknowledgment**

THIS STATEMENT IS MERELY A RECORD OF THE RIGHTS OF THE ADDRESSEE AS OF THE TIME OF ISSUANCE.  DELIVERY OF THIS STATEMENT, OF ITSELF, CONFERS NO RIGHTS ON THE RECIPIENT.  THIS STATEMENT IS NEITHER A NEGOTIABLE INSTRUMENT NOR A SECURITY.

Fairview Investment Fund III, LP
119 S. Main Street, Suite 410
Seattle, WA 98104
Attn:  Carson Rasmussen

      On this __12__ day of July, 2021, the undersigned President and Manager of the various companies below ("Company"), hereby acknowledge of receipt of that certain Collateral Pledge Agreement (as it may heretofore have been and may hereafter be amended, supplemented, restated or otherwise modified from time to time, the "Pledge Agreement") dated as of July _12_, 2021 made by Bran Enterprises, Inc and Bran Enterprises, LLC ("Pledgor"), in favor of Fairview Investment Fund III, LP  ("Secured Party").  In accordance with the instructions, direction and authorization of Pledgor as set forth in such Pledge Agreement, the Company hereby covenants and agrees that it shall hereafter comply with instructions originated by Secured Party with respect to the "Pledged Collateral" (as defined in the Pledge Agreement), including without limitation all of the membership interests and/or other equity interests issued by the Company in favor of Pledgor that are included in such definition of Pledged Collateral and therefore subject to the pledge and security interests in favor of Secured Party created under the Pledge Agreement (subject to any limitations on the extent of such pledge and security interests provided for in the Pledge Agreement) and with respect to the exercise of all rights of ownership relating thereto regarding all entity questions (including all such rights relating thereto arising out of the organizational documents of the Company) and all dividends and distributions payable thereon, without further consent of Pledgor.  To the knowledge of the Company (including, without limitation, any information which may appear on the undersigned's books and records) there are no other liens, restrictions or adverse claims to which the Pledged Collateral is, or may be subject, as of the date hereof.

[SIGNATURE PAGE FOLLOWS]

## SIGNATURE PAGE TO PLEDGE ACKNOWLEDGMENT

**MONTROSE MULTIFAMILY MEMBERS, LLC (consent)**
A Texas Limited Liability Company

By: _____
Name: Chrstopher Bran
Title: Manager

**SUL ROSS MEMBERS, LLC (consent)**
A Texas Limited Liability Company

By: _____
Name: Christophe Bran
Title: Manager

**BRAN ENTERPRISES II, LLC**
A Texas Limited Liability Company

By: _____
Name: Christopher Bran
Title: Manager

**CHRISTOPHER BRAN**

By: _____

**SCHEDULE I**
**To**
**COLLATERAL PLEDGE AGREEMENT**

<u>**Pledged Collateral**</u>

The following Collateral is hereby pledged by Pledgor to Secured Party pursuant to the Collateral Pledge Agreement to which this Schedule is attached:

| Name of Pledgor | Class of Entity Interests | Percentage | Owner of Entity Interests |
|---|---|---|---|
| Bran Enterprises, Inc | Membership interests in Montrose Multifamily Members, LLC | 17.50% | Yes |
| Bran Enterprises, LLC | Membership interests in Sul Ross Members, LLC | 60.00% | Yes |